This is the last case this morning. You may be seated. Good morning. And it is Willis v. Illinois State Police for the appellant. We have Brett Legner for the affiliate, John Davison. This is case number 4-150-480. Mr. Legner, you may proceed. Good morning, your honors. May it please the court, counsel. Brett Legner, Deputy Solicitor General on behalf of Appellant Illinois State Police. Your honors, this court should reverse the circuit court's order finding the director of the Illinois State Police in contempt. The state police was ordered to issue an appellee, Terry Willis, a FOID card forthwith. The state police did just that. The court later held the director in contempt because Willis remains reported as federally prohibited from owning or possessing firearms. But the issuance of the Illinois FOID card, which again, the state police issued as ordered, has no bearing on whether Willis is prohibited from owning or possessing firearms as a matter of federal law. My initial point, your honors, is that no prior order of the court expressly provided that the state police must report no federal prohibitions on Willis before the contempt order. The court had only ordered the state police to issue Willis a FOID card, and it did that. The requirement that the director or the state police issue a card and remove the federal firearm possession prohibitions came about for the first time expressly in the actual order that found the director in contempt. That is procedurally improper. That did not provide the director with sufficient notice before the contempt finding of what was expressly required by the court. And that independently justifies reversal. But setting aside the procedural impropriety and turning to the substantive matter, the requirement that the state police issue a FOID card and the effect of the issuance of that card on Willis' federal rights involves two questions. One, was Willis or is Willis federally prohibited from possessing or owning firearms? And by that I mean, does federal law prohibit Willis from owning or possessing firearms? And two, can the issuance of an Illinois FOID card under the FOID Act remove the federal prohibition when that prohibition is imposed as in this case because of a prior conviction for a misdemeanor crime of domestic violence? So turning to that first issue regarding whether Willis was in fact federally prohibited or is in fact federally prohibited. Section 922G9 of the Federal Gun Control Act of 1968 provides that individuals who have a conviction for a misdemeanor crime of domestic violence are prohibited from owning or possessing firearms. A misdemeanor crime of domestic violence is a crime that involves the use or threat of use of force against someone with whom the actor is in a domestic relationship. Here, Willis was convicted of a battery that involved the use of force. There's no dispute over that. Nor is there any dispute that the victim was someone with whom Willis was in a domestic relationship. It was his then wife with whom he was living. Therefore, the requirements of the federal law are satisfied. This is a conviction that counts as a misdemeanor crime of domestic violence under 922G9. Now, Willis contends that the conviction does not count because he was not charged with domestic battery or that the fact that he was in a domestic relationship with somebody was not an element of the crime for which he was convicted. But the case law by this point is well subtle that that's not relevant. What's relevant is that an element of the crime was the use or threat of use of force. Once that is established, then you can look, the courts, the Director of the State Police, can look at the underlying facts and determine if there was a domestic relationship. The domestic relationship does not need to be an element of the crime. The U.S. Supreme Court made that clear in the United States v. Hayes case that we cited. They explicitly spelled that out, that the domestic relationship does not need to be an element of the crime of which the person was convicted. And the Third District's decision in O'Neill that we cite in our briefs applies that reasoning to very analogous situations. Once it is established that Willis has a federal prohibition for a misdemeanor crime of domestic violence, the question is whether getting an Illinois FOID card has any effect on that. And the answer to that is clear, that it does not. In quorum, four justices of the Illinois Supreme Court explained that obtaining an Illinois FOID card has no bearing on your federal right to possess guns. The issue in quorum was whether the individual was entitled to a FOID card. The issue is not whether that person could then own or possess guns as a matter of federal law. Four justices, the two concurring and the two dissenting, made clear that Illinois law does not remove the federal prohibition. That is a separate matter. Being entitled to an Illinois FOID card does not mean that you are then entitled to possess guns as a matter of federal law, whether the prohibitor is for a misdemeanor crime of domestic violence. In Kahnauer, this court applied that reasoning and held the same. This court stated in Kahnauer, a majority of the Supreme Court in quorum held that when an Illinois court restores a person's right to possess firearms for purposes of Illinois law pursuant to Section 10 of the FOID Act, such restoration does not automatically restore the person's right to possess firearms and ammunition under the Federal Gun Control Act. And that language from Kahnauer and the holding of Kahnauer is exactly on point. In Kahnauer, the state police were ordered to issue the individual an Illinois FOID card. The circuit court also said that the state police was required to report that the individual at Kahnauer had no federal prohibition. This court held that the issuance of a FOID card is one thing. The federal prohibitor is another. And it removed, it vacated that part of the circuit court's order that required the state police to report that Kahnauer's federal prohibitions had been removed because that is outside the scope of the court's ability for somebody who is prohibited because of a conviction of a misdemeanor crime of domestic violence. Kahnauer is absolutely on point to this case in controls. Now, Willis also argues that application of the prohibition against him would be an improper ex post facto law. And my initial point on that is that that argument has been waived and is not developed. In Illinois, there are a variety of factors, seven factor tests to determine whether something is an ex post facto law. And Illinois follows the U.S. Supreme Court's decision in Kennedy versus Mendoza-Martinez. And Willis made no effort to apply any of the factors. So the ex post facto argument simply is not before the court. But in any case, the second district decision in Frederick that we cited in our brief has rejected this idea anyway, following the Illinois Supreme Court's decision in Ahashi, that the denial of the right to possess or the ability to possess our own firearms because of this past conviction is simply the denial of a future benefit that does not run afoul of the ex post facto clause. So in sum, Your Honor, the director of the state police was ordered to provide Mr. Willis with an Illinois FOIA card. And the state police did provide Mr. Willis with an Illinois FOIA card. He then complained that he is still being reported in the system when the background check is run as being prohibited as a matter of federal law from owning or possessing firearms. And that is true. But the simple issuance of an Illinois FOIA card does not remove the federal prohibitor. When the prohibitor is based on a misdemeanor, crime, or domestic violence, Illinois lacks the authority to remove. The Illinois courts or the state police lack the authority to remove that prohibitor through Section 10 of the FOIA Act. Willis obtained the relief he could get under Section 10 of the FOIA Act when he obtained an order that he be issued an Illinois FOIA card. He is not entitled to anything more. The failure of the state police to remove his federal prohibition was not an act in contempt of court. The court or the police issued the FOIA card. The police could do no more. The police could not remove the federal prohibition, nor could the court. Again, that prohibition is based on Section 922G9 of the Federal Gun Control Act. If this court has no further questions. I have one question. The 1978 conviction that you said fits under the federal scheme, how was the charge awarded? I'm sorry, how was the battery charge awarded? So the battery charge, and the battery charge is in the record. The battery charge did not make specific reference, I believe, to who the individual was who was subject to the battery. Correct. Is that your question? No, that's not my question. I'm sorry. My question is how was it worded? Because you've emphasized that it had to show force or the threat of the use of force. Is that the way it was worded, or was it worded as a battery that was something less than that? No, I don't believe it was worded. A fencing in nature. No, I don't believe, and again, I don't have the wording. Well, wouldn't that be important? Well, yeah, but the underlying facts of the battery. No, I think the Supreme Court says as an element. Yes, as an element, and the crime, the actual crime he was charged with, the provision of the Illinois device statutes that was cited in the charging instrument, refers to something that can have the use or threat of use of force. And so because that can be an element of the crime, then you look through the facts to see whether it involved the use or threat of use of force. And it did. So a battery in Illinois certainly is something that can involve an offense of touching. It can involve the use or threat of use of force. Offense of touching has been found to qualify as the use or threat of use of force for the purpose of the battery or for the purpose of the misdemeanor crime of domestic violence prohibition. And that's actually discussed by the U.S. Supreme Court in the Summers-Wazin case. Helpfully impulsively discussed. So it's just that something that would be described as an offensive touching, as long as it is a volitional touching that qualifies as a battery, can constitute a misdemeanor crime of domestic violence. Offensive touching is an adequate use of force for the purpose of the 922-G9 prohibition. Okay. And that case says that? Yes, Your Honor. All right. And by the time of rebuttal, I will have a pinpoint site for you. I have it at my desk. Sounds great. Awesome. Thank you. Mr. Davis. Good morning. Good morning. Mr. Davis, the court, counsel. Your Honor, just to turn in response to your question to counsel, I believe that the wording of the charge was, according to the statute, did willfully and without cause of provocation strike a named individual. I think that's the way the charge was worded in 1978. I'd also like to point out in 1978, there was no offense of domestic violence. The charge was battery, aggravated battery, but no charge whatsoever of domestic violence until years later. Well, the way it was charged, though, would meet the definition of force or attempted use of force. You would not refute that? I wouldn't refute that. Okay. No, but I don't believe that it's applicable to the case here. The situation was, although not brought out in a transcript, because there was no transcript, it was what we called then a prudent plea. He entered a plea of guilty to get rid of the thing. He paid a $25 fine, and 30-odd years later, he finds out that he can't get a FOIA card. And the record shows that had he known at the time that he could not obtain a card, he would never have pled guilty to that offense. While it might be inferred, factually, there was no mention that the victim was his wife, no mention that it could have been some other relative. It just didn't happen as a domestic violence case. Now, the question before this court is, was the Director of State Police in contempt of a lawful court order issued by the Circuit Court? The answer is, absolutely. When the arguments were heard in this case before Judge Weber and the Circuit Court in Decatur County, Illinois, Judge Weber found that the Director of State Police had willfully and consummationly failed to issue a valid FOIA card and ordered the State Police to do so. The State Police, then playing word games, issued a FOIA card to Mr. Willis. When Mr. Willis went to apply for weapons or ammunition, he was informed that his card was no good. It said FOIA card on the front, but when he went to use it, it didn't happen. When we brought the case back before the Circuit Court with these facts, the State Police argued, we complied with your order, Judge. We issued a FOIA card. But what they failed to mention was, they knew all along that he wasn't going to have a valid card. Why didn't they, at the Circuit Court level, argue this to Judge Weber, saying, Judge, we can issue a card, but it's going to be federally restricted and he won't be able to get anything? No, they didn't do that. Excuse me, Counsel, I'm sorry. Wasn't it argued? Didn't Judge Weber say something like, if it's with restrictions, it's just a useless piece of plastic? Yes, he did say that when we went back. What I'm saying is that the original hearing, the State Police knew the restriction would apply. Why then, at that time, didn't they tell Judge Weber, we can issue one, but it's not going to be any good, Judge? Well, it sounds like you've got the issue framed correctly. This is an appeal of the issuance of the contempt order, and the requirements for contempt are the existence of an order, a violation of the order, and that the violation was willful and consummations. So here it seems, in looking at the order that Judge Weber had entered, it says, the Illinois Department of State Police is directed to issue to Terry L. Willis a firearm owner's identification card forthwith. They did issue a card, albeit with the restrictions which you have noted. How is that a willful violation of a court order? Because the court order doesn't go beyond what I just read to you. Because, Judge, when a court orders the issuance of a card, it assumes and presumes that that card is going to be useful. The State Police knew all along that it wasn't going to be. So it's an implied term of Judge Weber's order that it be issued without restrictions. Correct, exactly. And then, when they issued the card, he found he couldn't use it. Then we filed a petition for rule, and the judge said it was a worthless piece of plastic. Do you have any cases that support the proposition that a party can be held in contempt for violating an implied term, and that the violation was not of an express term of the order? No, I'm sorry, I do not. But I think, again, the issue is, was this contempt? And there's no doubt that it was. The argument about quorum and so forth and so on are fluff, doesn't apply. However, if the court does see fit. But what if they can't issue a card without the federal prohibition? Our position there, Judge, is that they can issue a valid Illinois card with no restrictions, that if there are to be federal restrictions on it, that's up to the feds, not the state. The federal courts should be the ones responsible for enforcing or not enforcing that restriction, if it exists at all. But so far as Illinois is concerned, they have to issue a valid, unrestricted card. And then if there are federal restrictions, they can take that into the federal court. U.S. attorneys can prosecute. But not Illinois. Now, as I was going to say, if the court does see fit to go beyond and consider the arguments of quorum and so forth, I would ask leave of this court to consider. But we didn't have time to brief it, because the U.S. Supreme Court has ruled on an issue very similar to this in Boynes v. U.S. United States. And I would ask the court to consider the dissent of Justice Clarence Thomas in considering that case. I have copies of that case for the court here of his dissent, if the court sees fit to consider that. I guess I'm not following. Why would a dissent be useful to this court other than for educational purposes? I think it is for educational purposes. And I think Illinois is not a lockstep state. And I think this court can step forward and consider Second Amendment rights of law-abiding citizens who may have been charged some 30 years ago with an insignificant misdemeanor, and considering whether the Second Amendment of the United States is superseded by a misdemeanor crime. I believe Justice Thomas, if the court will consider that, can consider that kind of language in support of our argument. This is a fundamental constitutional right to keep and bear arms, and the courts have gone far to extremes in denying that fundamental right. Over the Fourth of July weekend, there were 75 gunshots, wounds in Chicago. Some 14 of those resulted in homicides. Every week, every day in Cook County, people are shot and murdered. I would submit that virtually none of those people have FOIA cards. But yet people like Mr. Willis, who is a target shooter, enjoys shooting, never in his entire life even thought about using his weapons in an aggressive manner, is denied the right to carry and bear arms. And I think this court can step forward, recognize that, and considering the dissent and logic of Justice Thomas in finding that the director is in contempt of this court. Any other questions? I see none. We thank you for your argument. Is there rebuttal? Do you want copies of those dissents? I have them. Do you have any objection to us seeing the dissent? Yeah, sure. We'll take copies. Actually, we're fully capable of getting copies if you just got that. Unless they're handy right there. I was going to say citation would be followed. Thank you. And now rebuttal. Thank you, Your Honor. And Justice Turner, just for the pinpoint site that I promised you from my opening, it is from the same case, though the majority opinion, that counsel just passed out. It's 136 S. Court at 2277. And what does it say? It says it's discussing another case that the court issued two years ago called Castleman. And the court says, and I'm quoting, In Castleman, we initially held that the word force in section 921A33A, which describes a conviction for misdemeanor crime to a survivor, the use of the word force in 921A33A of the gun control act bears its common law meaning and so is broad enough to include offensive touching. So in relation to whether or not. I wonder if that would include insulting touching. Well, there has to be a, that's a fair question. How about provoking, which are both terms used in our battery statute. Apparently that is not relevant here because counsel has stated for the record, and I review the briefs now, that the charge in 1978 did involve the striking of the domestic partner, which would therefore be force. But an interesting question for you is, had it been reduced to insulting or provoking contact, would you still be here arguing that that constitutes an element of force? That seems to be a stretch to me, but that's not the issue. It's going to be before the court. And that's certainly an issue that we do face sometimes, where the statute is broad enough to include uses of force but other things. And so then, while the statute could encompass it, you have to look to the facts of the case to determine whether probably it met that requirement. But it can get very complicated as you parse out specific charges under state law. How about Mr. Davis' argument about the fairness of this? This guy back in 1978 paid a $25 fine, apparently with no kind of supervision, probation of any kind. If he had supervision, we'd be in different circumstances. And now here we are all these years later, and he finds out by pleading guilty to that misdemeanor battery and paying that $25 fine results in his diminishment of Second Amendment rights and deprivation, actually. I mean, where's the fairness in that? And why doesn't the AG take notice of that and maybe try to formulate arguments which would take into consideration the Second Amendment protections? Oh, Your Honor, I do believe that we take into consideration Second Amendment protections. The point is that the law, the federal law, operates in a certain way here, and we can't do anything about it. The court required the state police to issue Mr. Wells an LMA-free card. Even if the federal law is wrong and unfair, there's just nothing you can do about it. I'm not saying that. That is not my official position. But it's not the case that there's nothing. Mr. Wells has avenues to remove the conviction as a federal prohibitor. What would that be? He can ask for a pardon. Wow. That's it? Well, no. Well, to the President of the United States, for a 30-year-old misdemeanor conviction, you're going to go through the rigmarole of trying to get a pardon, a presidential pardon? Not a presidential pardon, but from the governor. Illinois has probably worse. Illinois addresses these situations a lot. A lot of applications are made. A lot of actual pardon applications or clemency petitions are made to the governor to remove federal prohibitors from the firearms rights. That's one of the avenues that is specified in the Federal Control Act of how you can remove the federal prohibition. Well, there could be another. If state law permitted expungement, you could expunge. Illinois law does not permit that, but that's possible. And the other one, then, is if an individual's civil rights have been revoked and restored, which is not a situation we're in. How about the right of the Second Amendment? That's pretty substantial rights. In the Bill of Rights. Yes. There is no question that the Second Amendment is a substantial right. That's absolutely true. Courts have routinely upheld, though, the 922G9 prohibition from obtaining guns for people who have misdemeanor crimes of domestic violence. Okay. What you've just indicated to me is there may be a remedy, because I can see a lot of these cases occurring. In fact, we have seen some of them. Absolutely. The legislature could, I guess, provide a new statute which would allow expungement of misdemeanor convictions. That's right. Predating whatever year involving whatever conduct, which might be an avenue of relief for some of these people. Yeah, yeah. They could amend. So it's 20 ILCS 2630-5.2 is the expungement statute. They could amend that to allow that. Absolutely. That's a matter of legislature control. They could amend the expungement statute to allow for expungement of these, and that would make the convictions in matter of federal law not count anymore. So that avenue is absolutely there. But as federal law and state law exist right now, as a matter of federal law, again, like he has an Illinois FOIA card. He has a card that says for purposes of Illinois law, you cannot be charged with an Illinois crime for not having a valid FOIA card. But for purposes of federal law, which the state police aren't in a position to control or override, he is still barred because of the misdemeanor crime of domestic violence conviction. Gotcha. Okay. Thanks to both of you. Thank you. Case is submitted. The court stands in recess until further call.